UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware corporation, and FORD GLOBAL TECHNOLOGIES LLC, a Delaware Limited Liability Company,

Plaintiffs,

v.

THERMOANALYTICS, INC., a Michigan corporation,

Defendants.

Case No. 14-cv-13992

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFFS'
MOTION TO PRECLUDE PORTIONS OF EXPERT TESTIMONY UNDER FEDERAL
RULE OF CIVIL PROCEDURE 37(c) [64] AND GRANTING PLAINTIFFS'
MOTION TO PRECLUDE TESTIMONY REGARDING TOPICS ALREADY
ADJUDICATED ON SUMMARY JUDGMENT [65]**

**I. INTRODUCTION**

Ford Motor Company and Ford Global Technologies LLC ("Plaintiffs") commenced this action on October 16, 2014 against ThermoAnalytics, Inc. ("Defendant" or "TAI"). *See* Dkt. No. 1. On August 14, 2015, Plaintiffs filed an Amended Complaint alleging (1) False Designation of Origin, (2) Breach of Contract, (3) Estoppel, and (4) seeking declaratory judgment on the ownership of several trademarks and copyrights. *See* Dkt. No. 30.

On February 29, 2016, Plaintiffs filed two motions *in limine* to (1) preclude portions of expert testimony under Federal Rule of Civil Procedure 37(c) and (2) preclude testimony regarding topics already adjudicated on summary judgment. *See* Dkt. No. 64 & 65. A hearing on the motions was held on April 7, 2016 at 10:00 a.m. The matter has been fully briefed. For the reasons discussed below, the Court will **GRANT** the Plaintiffs' first motion [64] **IN PART**, and **GRANT** the Plaintiffs' second Motion [65].

## II. BACKGROUND

At the end of 1998, Plaintiffs and Defendant entered into a License Agreement ("the Agreement"). Dkt. No. 33 (Pg. ID No. 610). Under the terms of the Agreement, Defendant would have an exclusive license to develop and commercialize the existing "FGTI Licensed Software." *Id.* The Agreement defined FGTI Licensed Software as "RadTherm" and "Fluid Flow." *Id.* In exchange, the Defendant agreed to pay royalties and would assign all associated copyrights and trademarks. *Id.*

In the year 2000, Defendant released RadTherm Version 5.0 ("RadTherm 5.0" or "Version 5.0" or "Disputed Software"). Dkt. No. 33 (Pg. ID. No. 638). Defendant claimed that this version of RadTherm "was an entirely new software product and **not** a derivative of RadTherm 4.1.1, and it was **not** the licensed software under the License Agreement." *Id*. According to Defendant, RadTherm

5.0 was a modified version of software called MuSES, created in collaboration with the United States Army. *Id.* (Pg. ID No. 638–39). Defendant further claimed that all subsequent versions of RadTherm starting in 2000 were derived from the MuSES source code, and not the RadTherm 4.1.1 ("Original Software") source code that was subject to the Agreement. *Id.* Despite these updates however, the new software retained the name, RadTherm.

In November of 2013, the Defendant sent the Plaintiffs a termination notice, effective March 1, 2014. Dkt. No. 25 (Pg. ID No. 284). The last royalty was paid to Plaintiffs in March of 2014.

Plaintiffs filed the current action on October 16, 2014. On July 29, 2015, the Plaintiffs moved for partial summary judgment on their breach of contract and false designation of origin claims. On October 28, 2015, the Court granted Plaintiffs' motion, holding that RadTherm 5.0, and all latter versions of RadTherm, were subject to the Agreement, and that the Defendant was liable for false designation of origin and breach of contract.

### III. LEGAL STANDARD

A motion *in limine* refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The purpose of a motion *in limine* is to eliminate "evidence that is clearly inadmissible for any

purpose" before trial. *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). A district court rules on evidentiary motions *in limine* "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). The guiding principle is to "ensure evenhanded and expeditious management of trials." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

Although neither the Federal Rules of Evidence, nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*, the Supreme Court has allowed district courts to rule on motions *in limine* "pursuant to the district court's inherent authority to manage the course of trials." *See Luce*, 469 U.S. at 41 n.4.

A district court should grant a motion to exclude evidence *in limine* "only when [that] evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. In cases where that high standard is not met, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id*. Denial of a motion to exclude evidence *in limine* does not necessarily mean that the court will admit the evidence at trial. *See Luce*, 469 U.S. at 41. "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id*. at 41–42.

## IV. DISCUSSION

### A. Plaintiffs' Motion to Exclude Portions of Expert Report Under R. 37

Plaintiffs move to exclude Dr. Andre M. Malec's ("Dr. Malec") expert report under Federal Rule of Civil Procedure 37(c). The Rule states

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The rule further provides that "the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(C).

*a. Violation of Rule 26(a)*

Plaintiffs assert that "[a]t the outset of discovery, Ford served discovery requests seeking documents relating to the finances of ThermoAnalytics, Inc., including income statements and compiled financial statements." Dkt. No. 64 at 5–6 (Pg. ID No. 1475–76). According to Plaintiffs, Defendant "adamantly refused" this initial request for documents. *Id.* at 6 (Pg. ID No. 1476). However, Plaintiffs allege that Defendant's recently submitted expert report of Dr. Malec "now seeks to rely on documents that TAI has specifically refused and failed to produce." *Id.*

Rule 26(a) requires a party to,

> without awaiting a discovery request, provide to the other parties . . . a copy—or a description by category and location—of all documents,

> electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

Fed. R. Civ. P. 26(a)(1)(A)(ii). "The plain language of the Rule makes clear that the disclosing party must only disclose materials if that party intends to use the materials to support its claims or defenses." *Ruddell v. Weakley County Sheriff's Department*, No. 1:07-cv-01159-JDB-egb, 2009 WL 3757705, at *1 (W.D. Tenn. May 22, 2009) (holding that disclosure of documents intended to be used for impeachment purposes only is not required as an initial disclosure under Rule 26). Rule 26(a) "does not require wholesale disclosure of all documents that may be relevant to a case, but only those documents that the disclosing party may use to support its case in chief." *Labadie v. Dennis*, No. 1:07-cv-480, 2008 WL 5411901 (W.D. Mich. December 23, 2008).

Here, the documents at issue were relied upon by Dr. Malec in the production of his report. Therefore, the documents are being used to support Defendant's case in chief and thus were required to be disclosed under Rule 26(a). *See Byrne v. Monmouth County Dept. of Health Care Facilities*, No. 06–5184, 2008 WL 108894, at *3 (D.N.J. January 9, 2008) (requiring that a party disclose the information relied upon by an expert under Rule 26).

The discovery cutoff date was scheduled for December 15, 2015. Dkt. No. 29 at 3 (Pg. ID No. 493). The exchange of expert reports was scheduled for

February 15, 2016. *Id.* Defendant admits that the documents at issue were not produced until February 23, 2016. Dkt. No. 70 at 4 (Pg. ID No. 1783). At oral argument, Defendant further admitted to not immediately disclosing the documents upon becoming aware of their relevance. Therefore, Defendant has violated Rule 26(a).

Defendant argues that it made valid objections to the requests for the financial records. Dkt. No. 70 at 2 (Pg. ID No. 1781). However, the validity of the objections does not excuse the fact that the expert report relies on information that should have been disclosed voluntarily. When a party seeks to have an expert witness produce a report, any documents in that party's possession relied upon by the expert must be disclosed under Rule 26(a). *Byrne*, 2008 WL 108894 at *3.

### b. Harmlessness

Rule 37(c) requires the Court to sanction a party who violates Rule 26(a) unless the violation was harmless or justified. Fed. R. Civ. P. 37(c)(1). "The burden is on the potentially sanctioned party to prove harmlessness." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010).

In *Howe v. City of Akron*, the Sixth Circuit adopted the Fourth Circuit's five-part test for determining harmlessness. 801 F.3d 718, 747–48 (6th Cir. 2015). The Court considers the following:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence

*Id.* at 748.

Addressing the first factor, the Sixth Circuit found "surprise" where the non-violating party did not have the relevant undisclosed documents in their possession. *Id.* Here, Plaintiffs did not have the relevant documents in their possession and were unaware of their contents before the Defendant's late disclosure. Therefore, the first element weighs in the Plaintiffs' favor.

Second, there appeared to be some opportunity for Plaintiffs to cure the surprise. Plaintiffs attempted to gain access to the materials through the means of a discovery request but were denied. Later, after the documents had been released, Plaintiffs turned down the Defendant's offer to pay for a witness deposition regarding the financial information at issue. *Id.* at 5 (Pg. ID No. 1784). Plaintiffs could have accepted Defendant's offer and cured the surprise by taking a deposition. This element weighs in the Defendant's favor.

Third, seeing as the disclosure has taken place long before the trial date (August 30, 2016), allowing this evidence would not disrupt the trial in any significant manner. Therefore, this element also weighs heavily in the Defendant's favor.

Fourth, the evidence is important. The documents were relied upon by Defendant's damages expert, and were used in the creation of his report. The damages calculated by Dr. Malec which relied on the undisclosed documents came to substantially smaller totals. *See* Dkt. No. 64 (Exhibit 1, pp. 13–14, Pg. ID No. 1496–97). These smaller totals represent the primary alternative to Plaintiffs' damages calculation. Therefore, this element weighs in the Plaintiffs' favor.

Finally, the Defendant's explanation for the violation is inadequate. As stated above, Defendant argues that the information was not produced because the Plaintiffs' discovery request was too broad and unduly burdensome. This argument however does not address the more fundamental issue of Defendant's failure to include these documents in their initial disclosures. Defendant was required by Rule 26(a) to disclose all documents in support of their claims and defenses to Plaintiffs without request. Fed. R. Civ. P. 26(a)(1)(A)(ii). At the hearing, Defendant's counsel admitted that it was not known that the documents were relevant until Dr. Malec requested their production, which was apparently after the close of discovery. However, after Dr. Malec's request, it still took "weeks" for the documents to be disclosed. The Defendant has not explained this delay.

Accordingly, the Court finds the discovery violation to be neither justified nor harmless.

### c. The Sanction

If a violation of Rule 26(a) is neither justified nor harmless, then under Rule 37(c), the Court *must* sanction the violating party. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) ("Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it '*mandates* that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.' ") (quoting *Vance*, 1999 WL 455435, at *3) (emphasis added). Rule 37(c) lists exclusion of the evidence as a remedy. *See* Fed. R. Civ. P. 37(c). However, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Fed. R. Civ. P. 37(c)(1)(C).

Considering how far away the trial date is, the Court finds that excluding the evidence is too severe of a sanction. Accordingly, the Court will instead order the Defendant to pay the costs and attorneys' fees for Plaintiffs to be able to depose witnesses regarding the documents.

## B. Plaintiffs' Motion to Exclude Testimony Adjudicated by the Court's Summary Judgment Order

Plaintiffs' second motion *in limine* argues that the Court should exclude all testimony and evidence regarding source code similarity between different

software programs. This includes specifically, but not exclusively, the expert testimony and report of Dr. Jeffery Miller, Ph.D ("Dr. Miller"). Plaintiffs argue this testimony would only speak to issues already adjudicated on summary judgment, and therefore is not relevant under Federal Rule of Evidence 402. Dkt. No. 65 at 7–8 (Pg. ID No. 1531–32).

> Dr. Miller's expert report makes two final conclusions:
>
> 1. RadTherm 5.0 "is a radically different software program from version 4.1.1. Version 5.0 is not derived from version 4.1.1."
> 2. Version 11.3 "is not derived from version 4.1.1."[1]

Dkt. No. 65 (Exhibit A, Pg. ID No. 1544–45). Plaintiffs argue that RadTherm has already been found to be covered by the License Agreement, and thus any discussion of their status as "derivative" is irrelevant.

In response, Defendant argues that Dr. Miller's first conclusion is relevant because it speaks to the willfulness of the alleged trademark violation. Additionally, Defendant argues that the second conclusion is relevant because the Court's Opinion and Order on summary judgment did not extend to other software programs, such as RadThermIR and PowerTherm, and these programs fall outside of the scope of the License Agreement.

---

[1] "Version 11.3" refers to two other software programs: RadThermIR and PowerTherm.

*a. Evidence Regarding RadTherm Version 5.0*

Defendant argues that Dr. Miller's report is relevant to the willfulness of the alleged trademark violation. Dkt. No. 69 at 10 (Pg. ID No. 1647). The Defendant claims that "an important aspect of calculating damages for a claim of trademark infringement is whether or not the infringement was willful." *Id.* Defendant further argues that "[t]estimony by Dr. Miller and others on the subject of RadTherm's development will establish, for example, that . . . the use of the RadTherm trademark after the termination of the Agreement was based on the good-faith belief that RadTherm had been developed independently for the U.S. Army . . .". *Id.*

The Court disagrees. Dr. Miller's conclusion does not speak to the likelihood of Defendant's good-faith use of the trademark. Dr. Miller did not even appear to be *concerned* with the trademark during his analysis. *See* Dr. Miller's Report, at 2 (Pg. ID No. 1541). Dr. Miller's conclusion only addresses the similarity between the source codes of Version 4.1.1 and Version 5.0. Whether or not the two software codes are derivative or similar does not make it more or less likely that the Defendant had a good faith belief they could use the mark, RADTHERM. Accordingly, Dr. Miller's testimony is not relevant to the Defendant's willfulness in any meaningful way.[2]

---

[2] In fact, Dr. Miller's testimony appears to cut in favor of Plaintiffs with regard to the trademark. Evidence demonstrating that the two software programs are different, as Dr. Miller concludes,

Defendant further argues that "[t]he fact that TAI developed the software that became RadTherm 5.0 and later versions without either funding or participation by Ford, coupled with the facts that TAI registered the RadTherm trademark without objection from Ford, certainly shows that TAI had a good faith basis to believe that it was acting properly." Dkt. No. 69 at 10–11 (Pg. ID No. 1647–48). This may be true. However, Defendant does not need an expert witness to testify to those facts. In fact, it's not even clear that Dr. Miller (or any other expert witness) would have the personal knowledge necessary to testify to those facts. His expert report makes no reference to being involved in the development of RadTherm 5.0. Any testimony to those facts would likely be inadmissible hearsay evidence.

Accordingly, Dr. Miller's expert report and testimony with regard to the source-code of RadTherm 5.0 will be excluded.

### b. *Dr. Miller's Conclusion Regarding Other Software*

Defendant argues that the Court has made no rulings whatsoever regarding the other programs analyzed by Dr. Miller. Dkt. No. 69 at 12 (Pg. ID No. 1649). Therefore, Defendant argues, testimony regarding their similarity to the Original Software would be relevant to determining if they are covered under the License Agreement.

---

only further evidences that ascribing the mark, 'RADTHERM' to the infringing software was inappropriate.

The Court's holding extended to all "latter versions of RadTherm." Dkt. No. 47 at 12 (Pg. ID No. 947). Therefore, if the other programs analyzed by Dr. Miller (i.e., PowerTHERM and RadThermIR) are latter versions of RadTherm 4.1.1, then they are subject to the Agreement.

In the summary judgment order, the Court cited to factors such as (1) function, (2) inspiration, (3) advertisement, and (4) existence during the re-affirmation of the License Agreement in 2012, as evidence that the latter versions of RadTherm were created "with respect" to the RadTherm 4.1.1. These factors, although illustrative, were not exhaustive. It's not clear if these factors are present for programs such as RadThermIR and PowerTHERM.[3] However, Dr. Miller's report speaks to none of these factors. The report only addresses the similarity in the source code. The Court found in its summary judgment order that the Disputed Software, such as RadTherm 5.0, was covered under the agreement regardless of similarity in the source code. Thus, despite the above listed factors being non-exhaustive, source code similarity is not considered as a part of the analysis. Therefore, Dr. Miller's opinion does not make any material fact in the case more or less likely. Accordingly, Dr. Miller's latter conclusion and analysis will also be excluded.

---

[3] The Expert Report refers to RadTherm Version 5.0 as being separate from RadThermIR and PowerTHERM. However, the report also seems to consolidate RadThermIR and PowerTHERM into a single category labeled, RadTherm 11.3. The Court does not find it necessary to make a ruling regarding which software programs are covered by the Agreement.

Seeing as the entirety of Dr. Miller's opinion is not relevant, it is not necessary to address Plaintiffs' alternative argument to exclude his opinions under *Daubert*. Dr. Miller's testimony will be excluded under Federal Rule of Evidence 402. In addition, under the Court's reasoning in its summary judgment opinion, any testimony regarding the similarity and differences in source code between the different versions of RadTherm does not make its inclusion under the License Agreement any more or less likely. Accordingly, under Rule 402, that testimony is also inadmissible.

## V. CONCLUSION

For the reasons discussed above,

IT IS HEREBY ORDERED that Defendant is **SANCTIONED** under Federal Rule of Civil Procedure 37(c). Defendant shall pay the costs and attorney's fees for Plaintiffs to depose the necessary witnesses regarding the newly disclosed documents.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Preclude Testimony Regarding Topics Already Adjudicated on Summary Judgment [65] is **GRANTED.** Dr. Miller's expert report, as well as any testimony regarding source code similarity between software programs, is excluded as not relevant.

| | |
|---|---|
| Dated: April 14, 2016<br>Detroit, MI | /s/Gershwin A Drain<br>HON. GERSHWIN A. DRAIN<br>United States District Court Judge |