UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a Delaware
corporation, and FORD GLOBAL
TECHNOLOGIES, LLC, a Delaware
limited liability company

Plaintiffs,

v.

THERMOANALYTICS, INC., a Michigan
corporation,

Defendant.
_____/

Case No. 14-cv-13992

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [67]**

**I. INTRODUCTION**

Ford Motor Company and Ford Global Technologies, LLC ("Plaintiffs" or "FGTI"), commenced this action on October 16, 2014 against ThermoAnalytics, Inc. ("Defendant"). *See* Dkt. No. 1. On August 14, 2015, Plaintiffs filed an Amended Complaint adding no new parties. *See* Dkt. No. 30. In the Amended Complaint, Plaintiffs contend that Defendant is liable for: (I) False Designation of Origin under 15 U.S.C. § 1125(a); (II) Breach of Contract; (III) Promissory Estoppel; and request (IV) Declaratory Judgment on the RadTherm Software. *See id*.

-1-

On July 29, 2015, Plaintiffs filed a Motion for Partial Summary Judgment on both the False Designation of Origin claim and the Breach of Contract claim. *See* Dkt. No. 25. The Court granted Plaintiffs' Motion for Partial Summary Judgment on October 28, 2015. *Ford Motor Co. v. Thermoanalytics, Inc.*, No. 14-CV-13992, 2015 WL 6522857 (E.D. Mich. Oct. 28, 2015), *reconsideration denied sub nom. Ford Motor Co. v. Thermoanalytics, Inc.*, No. 14-CV-13992, 2016 WL 386431 (E.D. Mich. Feb. 2, 2016).

Before the Court is Defendant's Motion for Partial Summary Judgment. *See* Dkt. No. 67. The matter has been fully briefed. A hearing was held on June 1, 2016 at 10:30 a.m. For the reasons discussed below, the Motion [67] is **GRANTED IN PART** and **DENIED IN PART.**

## II. BACKGROUND

Plaintiffs and Defendant entered into a License Agreement (the "Agreement") on December 31, 1998. The License Agreement defined the parties' relationship with regard to thermal engineering software, known as RadTherm. The License Agreement was terminated on March 1, 2014.

Between the execution of the Agreement and its termination, Defendant developed and sold other software in addition to RadTherm, known as Modules. Plaintiffs have alleged that it is entitled under the License Agreement to royalties

on revenues from four Modules: the Battery Module, Human Module, Advanced Solver, and "CAE Coupling Module." Amended Complaint, ¶ 92.

Plaintiffs' recently-submitted expert damage report also contains claims related to software known as PowerTherm. Dkt. No. 67 at 9 (Pg. ID No. 1594). Defendant asserts that neither the Complaint nor the Amended Complaint contain any allegation regarding PowerTherm, and thus these claims should be dismissed. *Id.*

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

The Defendant has moved for Partial Summary Judgment on two separate issues. First, Defendant argues that royalties are not owed on specific types of software, known as "Modules." Second, Defendant argues that all claims with regard to software known as "PowerTherm" should be denied because they were not included in Plaintiffs' Complaint.

### A. The Royalties

Defendant puts forward two theories for why Plaintiffs should be prevented from reaping royalties on the Modules. First, Defendant argues that Plaintiffs are not entitled to royalties on the Modules under the Royalties provision of the Agreement. Dkt. No. 67 at 9 (Pg. ID No. 1594). Second, Defendant argues that Plaintiffs are equitably estopped from seeking royalties on the Modules. *Id.* at 12 (Pg. ID No. 1597). The Court shall first address the scope of the Royalties provision.

"The general rules of contract law require that courts interpret contracts according to their plain meaning, in an ordinary and popular sense." *Gillham v. Tennessee Valley Auth.*, 488 F. App'x 80, 84 (6th Cir. 2012); *Rogers v. I.R.S.*, No. 15–3409, 2016 WL 2343169, *5 (6th Cir. May 4, 2016). The basic goal of contract interpretation is to give effect to the intent of the parties. *In re AmTrust Fin. Corp.*,

694 F.3d 741, 749 (6th Cir. 2012). "Where a contract's meaning is clear on its face, that meaning controls." *Id.* at 750.

The Defendant's obligations to pay royalties are covered under Sections 4.1 and 4.2 of the License Agreement. Section 4.2 of the Agreement provides, in relevant part, that Defendant must pay

> . . . a Royalty to FGTI for each sale of FGTI Licensed Software, Licensee Licensed Software and Jointly Owned Software which are included as part of consulting services or the development of third party software Modules which operate in conjunction with any portion of FGTI Licensed Software, Licensee Licensed Software and Jointly Owned Software.

License Agreement, § 4.2. This section, Defendant argues, requires royalties to be paid *solely* for each sale of RadTherm (and other licensed software), including sales attached to consulting services, or sales of RadTherm included in the development of Modules. Plaintiffs argue that this reading of the contract makes the reference to Modules superfluous. Dkt. No. 77 at 24 (Pg. ID No. 2110) ("If no royalties were owed on any module sales under the License Agreement, as [ThermoAnalytics] argues, the reference to 'modules' in ¶ 4.2 would be superfluous."). Under Plaintiffs' interpretation, Defendant is obliged to pay a royalty on revenue from the sale of RadTherm included in consulting services, as well as revenue gained from the development of any and all third party software modules which operate in conjunction with RadTherm.

The Court finds Plaintiffs' interpretation in conflict with the rest of the royalty section. First, Sections 4.1 and 4.2, revolve primarily around the sale of FGTI Licensed Software, Licensee Licensed Software, and the Jointly Owned Software. Section 4.1, which covers the basis for royalties, makes no mention of Modules. *See* License Agreement, § 4.1. It stands to reason that if the parties wished to include royalties on the sale and development of Modules, then they would have included a basis for those royalties in Section 4.1, or created a new section for its basis entirely.

Second, Section 4.2 subdivides each royalty obligation into distinct sentences based on the individual types of transactions. To illustrate, the other royalty obligations read as follows:

- Licensee shall pay to FGTI an initial Royalty of Five Thousand ($5,000) dollars, by June 30, 1999.

- Licensee shall pay a Royalty to FGTI for each Sale of each copy of FGTI Licensed Software, Licensee Licensed Software and Jointly Owned Software at a rate that is 10% of the Reference Price for the corresponding Sales charged to Customers by Licensee or Licensee's authorized or 10% of the actual price charged, whichever is greater.

- Licensee shall also pay a Royalty to FGTI that is 10% of the Reference Price for the corresponding annual maintenance service Sales charged to Customers by Licensee or Licensee's authorized distributors or 10% of the actual price charged, whichever is greater.

License Agreement, § 4.2.

Plaintiffs' interpretation of the relevant language would require royalties for *two* different transactions: 1) for the sale of RadTherm in conjunction with consulting, and 2) the development of any Module that operates in conjunction with RadTherm. Therefore, Plaintiffs' interpretation of Section 4.2's final royalty obligation would break the section's trend of describing one obligation per sentence. To compare, Defendant's interpretation would continue Section 4.2's trend by describing one transaction: an incidental sale of RadTherm. If the contracting parties wished to contract a royalty for all development of Modules, the rest of the section indicates that the obligation would be described in its own sentence.

Next, Plaintiffs argue that Defendant's use of the RadTherm Trademark on the Modules was a violation of the Lease Agreement, and thus the Motion for Summary Judgment should be denied. Dkt. No. 77 at 21 (Pg. ID No. 2107). While this argument addresses whether or not the License Agreement has been breached, it is non-responsive to the question of royalties owed on the Modules. Section 4.2 of the License Agreement does not require royalties to be paid on all software bearing the Plaintiffs' trademark. License Agreement, § 4.2. Defendant may owe damages for breach of contract, but not necessarily royalties. Therefore, this argument fails.

Plaintiffs also argue that the Modules are covered under the royalty provision as "works of authorship created with respect" to RadTherm, under Section 8.1 of the License Agreement. Dkt. No. 77 at 25 (Pg. ID No. 2111). Once again, this does not necessarily respond to the question of royalties, so much as it does the question of breach of contract.

Section 8.1 of the License Agreement grants Plaintiffs copyrights for all "joint works." License Agreement, § 8.1. It does not however grant rights to royalties. *Id.* Furthermore, the term "joint works"—distinct from "Jointly Owned Works"—is not utilized in Sections 4.1 or 4.2. Thus, a plain reading of the License Agreement suggests that no royalty obligations are owed for the revenue gained from "joint works." This means that while Plaintiffs may be entitled to the copyrights behind the Modules, they would not be entitled to royalties for their sale.

Finally, at the hearing, Plaintiffs' counsel argued that the Modules are covered under the definition of Jointly Owned Software as derivative of RadTherm. However this argument breaks down in context with the other royalty obligations. If, as Plaintiffs argue, the Modules were covered under the definition of Jointly Owned Software, then a requirement for a royalty on the development of the Modules—as Plaintiffs maintain—would be superfluous. Section 4.2 already requires a 10% royalty on every sale of Jointly Owned Software. The Court refuses

to adopt Plaintiffs' interpretation. *Lockheed Martin Corp. v. Goodyear Tire & Rubber Co.*, 2012 WL 3499510, *4 (N.D. Ohio August 15, 2012) ("It is a general canon of contract construction that courts should not interpret a contract so as to render clauses superfluous.").

A plain reading of Section 4.1 and 4.2 indicates that Plaintiffs are not entitled to royalties on the Modules. Accordingly, an analysis into Defendant's argument for equitable estoppel is not necessary.

### B. PowerTherm

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The Rule further provides, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). "[I]n doing so [the Court] must look to the complaint 'as a whole' to see if it provides 'sufficient notice' of the claim." *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 543 (6th Cir. 2015).

The Defendant argues that because claims related to PowerTherm were not listed in the Amended Complaint, Plaintiffs may not be allowed assert them now. Dkt. No. 67 at 13 (Pg. ID No. 1598). In response, Plaintiffs argue that the Complaint did in fact request relief for PowerTherm. Dkt. No. 77 at 32 (Pg. ID No. 2118).

In the Amended Complaint, Plaintiffs alleged that

Defendant has breached its obligations under the License Agreement by refusing to "return to FGT[L] all copies of and information related to FGT[L] Licensed Software, and Jointly Owned Software that were furnished to or prepared by Licensee in connection with the rights Licensed under this agreement."

Amended Complaint, ¶ 112. The Amended Complaint also states

Defendant has breached its obligations under the License Agreement by refusing to assign its "individual rights, title and interest in copyrights in the *joint works* then existing to FGT[L] and Licensee as joint owners."

*Id.* at ¶ 113 (emphasis added).

As one can see, Plaintiffs have made claims regarding "joint works." As stated in the Agreement, all derivative works of authorship, and software programs created with respect to RadTherm are considered "joint works" under the Agreement. License Agreement, § 8.1. Therefore, the Complaint put Defendant on notice that relief was being requested for all programs that could be considered a "joint work."

Plaintiffs have presented evidence that PowerTherm is derivative of RadTherm. Dkt. No. 77 at 31–32 (Pg. ID No. 2117–18). For example, Plaintiffs point to the fact that Ford's ownership interest in the PowerTherm software is explicitly recognized in software agreements between ThermoAnalytics and other companies. *Id.* Plaintiffs also point to the fact that several versions of PowerTherm bear copyright notices identifying Ford as an owner. *Id.* Therefore, after the course

of discovery, there was sufficient evidence to put Defendant on notice that PowerTherm was subject to the litigation.

Defendant asserts that because Plaintiffs only argued that PowerTherm was derivative of RadTherm, and did not argue that it was "created with respect" to RadTherm, that Plaintiffs have missed the dispositive issue. Dkt. No. 81 at 6 (Pg. ID No. 2378). Defendant's argument is misguided.

In its October 28, 2015 Order Granting Plaintiffs' Motion for Partial Summary Judgment, the Court made clear that the definition of a "joint work" included both works created with respect to RadTherm *and* works that are derivative of RadTherm. *Ford Motor Co.*, 2015 WL 6522857, at *7 ("The Court finds that the Agreement extends to 'all derivative works created with respect to Jointly Owned Software' (e.g. the Original Software) and 'all works of authorship created with respect to Jointly Owned Software.' "). Therefore, Plaintiffs have not missed a dispositive issue. The License Agreement covers both types of "joint works." Accordingly, because the Amended Complaint puts Defendant on notice for claims related to PowerTherm, the Defendant's motion to bar claims relating to PowerTherm will be denied.

V. CONCLUSION

For the reasons discussed above, the Defendant's Motion for Partial Summary Judgment [67] is **GRANTED IN PART** and **DENIED IN PART**.


IT IS SO ORDERED.

Dated: June 8, 2016     s/Gershwin A. Drain
Detroit, MI     HON. GERSHWIN A. DRAIN
    United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **June 8, 2016.**

    s/Tanya R. Bankston
    TANYA R. BANKSTON
    Case Manager & Deputy Clerk